UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:                                                          Chapter 11 (Subchapter V)

BEAR'S FRUIT LLC,                                               Case No. 25-43951 (JMM)

                            Debtor.
------------------------------------------------------------------x

### INTERIM ORDER (I) AUTHORIZING
### THE DEBTOR TO OBTAIN POST-PETITION
### FINANCING, (II) GRANTING LIENS AND SUPER-PRIORITY
### ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTION 364(c)
### OF THE BANKRUPTCY CODE, AND (III)GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion"),[1] of the above-captioned debtor and debtor in possession (the "Debtor"), in the above-captioned Chapter 11 Case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 364, 503, 506(c) and 507 of title 11 of the United States Code 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Eastern District of New York (the "Local Bankruptcy Rules"), seeking entry of an interim order (this "Interim DIP Order") granting the following relief to be provided on an interim basis: (1) authorizing the Debtor to obtain post-petition financing ("DIP Line of Credit") on a senior priority basis, in accordance with and subject to the terms and conditions set forth in that certain DIP Commitment Letter attached to the DIP Motion as **Exhibit B** (as amended, supplemented, or otherwise modified from time to time, the "DIP Commitment Letter"), by and among the Debtor and Mr. Forwood Cloud Wiser III, as lender (the "DIP Lender"), in the aggregate principal amount not to exceed $150,000.00 (the "DIP Line of Credit"), which shall be

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the DIP Motion or the DIP Commitment Letter, as applicable.

made available to the Debtor strictly in accordance with and subject to the terms of the DIP Commitment Letter and the Budget; (2) authorizing the Debtor to execute, deliver, and perform under the DIP Commitment Letter and all other loan documentation related to the DIP Line of Credit (collectively, with the DIP Commitment Letter, this Interim DIP Order, and a final DIP order, the "DIP Documents"); (3) authorizing the Debtor to incur obligations with respect to loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees, costs, expenses, and other liabilities, all other obligations due and payable under the DIP Documents (collectively, the "DIP Obligations"); (4) granting to the DIP Lender an allowed super-priority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations; (5) granting to the DIP Lender a valid, enforceable, non-avoidable and automatically perfected lien pursuant to section 364(c)(2) of the Bankruptcy Code on the DIP Collateral and all proceeds thereof; (6) authorizing the Debtor to use proceeds of the DIP Line of Credit solely in accordance with and subject to this Interim DIP Order, the Budget, and the DIP Documents; (7) authorizing the Debtor to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Documents as such become earned, due, and payable to the extent provided in, and in accordance with, and subject to, the DIP Documents; (9) authorizing the Debtor to pay all amounts outstanding to Express Trade Capital, Inc. ("Express Trade"), and (10) granting related relief.

Notice of the DIP Motion, the relief requested therein, and the Hearing (as defined below) (the "Notice") having been served by the Debtor in accordance with Bankruptcy Rule 4001(c) on: (i) the Office of the United States Trustee for Region 2 ("U.S. Trustee") and the Subchapter V Trustee; (ii) the Internal Revenue Service and all relevant New York taxing authorities; (iii)  the DIP Lender; (v) the holders of the twenty (20) largest unsecured claims

against the Debtor's estate; (vi) all parties known to the Debtor that hold any liens or security interests in the Debtor's assets, and (v) all other parties entitled to receive notice pursuant to the Bankruptcy Rules and the Local Rules (collectively, the "Noticed Parties").

The Bankruptcy Court having considered the relief requested in the DIP Motion, the exhibits attached thereto, including the *Declaration of Amy Driscoll in Support of Debtor's Motion (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Administrative Expense Status Pursuant to Section 364(c) of the Bankruptcy Code, and (III) Granting Related Relief* attached to the Motion as **Exhibit C**, the available DIP Documents, and the evidence submitted and arguments made at the hearing held on August __, 2025 (the "Hearing"); and the Hearing having been held and concluded; and all objections, if any, to the final relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Bankruptcy Court; and it appearing that approval of the final relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtor and its' estate, otherwise is fair and reasonable and in the best interests of the Debtor and its' estate, and is essential for the continued operation of the Debtor and the preservation of the value of the Debtor's assets; and it appearing that the Debtor's entry into the DIP Documents is a sound and prudent exercise of the Debtor's business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

---

[2] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule

A.    Petition Date. On August 15, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

B.    Debtor In Possession. Since the Petition Date, the Debtor has remained in possession of its assets and is a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed at this time; Gerard R. Luckman has been appointed as the Subchapter V trustee.

C.    Jurisdiction and Venue. This Bankruptcy Court has core jurisdiction over the Chapter 11 Case, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the Eastern District of New York. Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Bankruptcy Court may enter this Interim DIP Order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Case and proceedings on the DIP Motion is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Rules 2002-1, 4001-2, and 9014-2. The Debtor and the DIP Lender consent to the entry of this Interim DIP Order to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter the DIP Order or judgments in connection with the DIP Motion consistent with Article III of the United States Constitution.

---

9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      Notice. The Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Under the circumstances, the notice given by the Debtor of the DIP Motion, the relief requested therein, and of the Hearing, complies with Bankruptcy Rules 2002, 4001(b), and (c) and 9014 and Local Bankruptcy Rules 4001-2 and 9013-1.

E.      Findings Regarding the DIP Line of Credit.

(i)      Good and sufficient cause has been shown for the entry of this Interim DIP Order and for authorization of the Debtor to obtain senior secured financing pursuant to the DIP Documents.

(ii)      The Debtor has an immediate and critical need to obtain the DIP Line of Credit in order to permit, among other things, the Debtor to fund: (i) various payments to critical vendors and for other costs associated with an August 29th production run; (ii) ongoing storage and distribution costs associated with its products; (iii) essential operating expenses, including court-approved owner compensation, insurance, and administrative costs of this Chapter 11 Case; (iv) sales and marketing commitments to retail partners including Whole Foods and Wegmans; and (v) and to satisfy other capital and operational needs and to fund expenses of the Chapter 11 Case in accordance with and subject to the Budget. The access of the Debtor to sufficient working capital and liquidity through the use of DIP Collateral and the incurrence of new indebtedness under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtor and to a successful reorganization.

(iii)      Based on the DIP Motion and the record presented to the Bankruptcy Court at the Hearing, the Debtor made sufficient attempts to find financing on better terms, and the DIP Line of Credit represents the best terms and pricing for such financing, and the Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lender

under the DIP Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims (as defined herein), under the terms and conditions set forth in this Interim DIP Order and in the DIP Documents.

(iv)    Based on the DIP Motion and the record presented to the Bankruptcy Court at the Hearing, the terms of the DIP Line of Credit pursuant to this Interim DIP Order and the DIP Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(v)    The DIP Line of Credit has been negotiated in good faith and at arm's length between the Debtor and the DIP Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with, the DIP Line of Credit and the DIP Documents, including, without limitation, all loans made to the Debtor pursuant to the DIP Documents and any DIP Obligations shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and its successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim DIP Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(vi)    The Debtor has prepared and delivered to the DIP Lender the Budget attached hereto as **Exhibit B**. The Budget reflects, among other things, the Debtor's anticipated

disbursements, and is in form and substance satisfactory to the DIP Lender. The Budget may be modified, amended, and updated from time to time in accordance with the DIP Documents, and once approved by the DIP Lender, shall supplement and replace the Budget (the initial Budget and each subsequent approved budget, shall constitute without duplication, the "<u>Budget</u>"). The Debtor believes that the Budget is reasonable under the facts and circumstances. The DIP Lender is relying, in part, upon the Debtor's agreement to comply with the Budget, the other DIP Documents, and this Interim DIP Order in determining to enter into the post-petition financing arrangements provided for in this Interim DIP Order.

F.      <u>Immediate Entry</u>. Sufficient cause exists for immediate entry of this Interim DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). Absent granting the relief set forth in this Interim DIP Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the DIP Line of Credit and the use of DIP Collateral, in accordance with this Interim DIP Order and the DIP Documents are therefore in the best interests of the Debtor's estate and consistent with the exercise of its fiduciary duties.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Bankruptcy Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      <u>Motion Granted</u>. The relief sought in the DIP Motion is granted to the extent set forth herein on an interim basis, and the financing described herein is authorized and approved, on a senior secured basis, in each case to the extent set forth in this Interim DIP Order and in accordance with and subject to the terms and conditions set forth herein and to the extent not

inconsistent with this Interim DIP Order. All objections to this Interim DIP Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled on the merits.

2.    <u>Authorization of the DIP Line of Credit and the DIP Documents</u>.

(a)    To prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby expressly authorized and empowered to execute, deliver, enter into and, as applicable, perform all of its obligations under the DIP Documents and such other and further acts as may be necessary, appropriate, or desirable in connection therewith. The Debtor is hereby authorized to borrow up to $95,000 on an interim basis, and up to $150,000 in total upon entry of a final DIP Order.

(b)    In furtherance of the foregoing and without further approval of this Bankruptcy Court, the Debtor is authorized to perform all acts, to make, execute, and deliver all instruments, certificates, agreements, charges, deeds, and documents and to pay all fees, expenses, and indemnities in connection with or that may be reasonably required, necessary, desirable or requested by the DIP Lender for the Debtor's performance of its obligations under or related to the DIP Line of Credit, including, without limitation: (i) the execution and delivery of, and performance under, each of the DIP Documents; (ii) the execution and delivery of, and performance under, one or more amendments, waivers, consents, or other modifications to and under the DIP Documents, in each case, in such form as the Debtor and the DIP Lender may agree; and (iii) the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens, and to perform such other and further acts as may be necessary, desirable, appropriate or requested by the DIP Lender in connection therewith, in each case in accordance with and subject to the terms of the DIP Documents.

(c)     All the terms and provisions of the DIP Commitment Letter are hereby incorporated herein and approved.

3.     <u>DIP Obligations</u>. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor and its estate in accordance with and subject to the terms of the DIP Documents and this Interim DIP Order, and any successor thereto, including any trustee appointed in the Chapter 11 Case, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Case</u>"). Upon execution and delivery of the DIP Documents, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Lender under, or secured by, the DIP Documents or this Interim DIP Order, including all principal, interest, costs, fees, expenses, indemnities, and other amounts under the DIP Documents (including this Interim DIP Order). Except as permitted hereby, no obligation, payment, transfer, or grant of security hereunder or under the DIP Documents to the DIP Lender (including its Representatives) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any

other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.    <u>DIP Superpriority Claims</u>. In addition to the liens under 11 U.S.C. §364(c)(2), all of the DIP Obligations shall constitute allowed super-priority administrative expense claims against the Debtor (without the need to file any proof of claim) pursuant to section 364(c)(1) of the Bankruptcy Code, with priority over any and all claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "<u>DIP Superpriority Claims</u>") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code; <u>provided</u> that the DIP Superpriority Claims shall not be subject to surcharge pursuant to section 506(c) of the Bankruptcy Code   or be senior to any proceeds or property recovered, unencumbered or otherwise, from any avoidance actions, whether by judgment, settlement or otherwise (the "<u>Avoidance Proceeds</u>"). The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5.    <u>DIP Liens</u>.  As security for the DIP Obligations, effective and automatically and properly perfected upon the date of this Interim DIP Order without the necessity of recordation or filing by the Debtor or the DIP Lender of mortgages, security agreements, control

agreements, pledge agreements, financing statements, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP Lender of, or over, any DIP Collateral, the following valid, binding, continuing, enforceable and non-avoidable senior security interests and liens with priority over all existing liens and mortgages (all security interests and liens granted to the DIP Lender pursuant to this Interim DIP Order and the DIP Documents, the "DIP Liens") are hereby granted to the DIP Lender pursuant to section 364(c)(2) of the Bankruptcy Code to provide a valid, binding, continuing, enforceable, fully perfected first (not including Chapter 5 causes of action) priority senior security interest in and lien upon the DIP Collateral (as defined in the DIP Commitment Letter).

6.      Protection of DIP Lender's Rights.

(a)      The automatic stay is hereby modified to the extent necessary to permit the DIP Lender to take any or all of the following actions, at the same or different time, in each case without further order or application of the Bankruptcy Court: (i) to file a DIP mortgage covering the DIP Collateral, (ii) upon the occurrence and continuance of an Event of Default and the giving of ten (10) business days' prior written notice (the "Remedies Notice Period") via email to counsel to the Debtor, any official creditors' committee, the U.S. Trustee, and counsel to the DIP Lender, which notice shall also be filed on the docket of the Bankruptcy Court, unless this Bankruptcy Court orders otherwise during the Remedies Notice Period after a hearing, (iii) exercise all rights and remedies available under the DIP mortgage and the applicable DIP Documents and otherwise available under applicable law whether or not the maturity of any of the DIP Obligations shall have been accelerated, and (iv) withdraw consent to the Debtor's continued use of the DIP Line of Credit.

(b)      During the Remedies Notice Period, the Debtor shall be permitted to cure any Event of Default solely to: (i) pay critical administrative expenses to preserve and protect the DIP Collateral strictly in accordance with the Budget (without variance) or as otherwise agreed by the DIP Lender, and (ii) seek a hearing before the Bankruptcy Court. During the Remedies Notice Period, the Debtor, any official creditors' committee and/or any party in interest shall be entitled to seek an emergency hearing with the Bankruptcy Court within the Remedies Notice Period solely for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing. Except as set forth in this Interim DIP Order, the Debtor shall waive its right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Lender set forth in this Interim DIP Order or the DIP Documents.

(c)      If the Event of Default is not cured during the Remedies Notice Period, the DIP Lender shall be entitled to seek an emergency hearing with the Bankruptcy Court to determine whether the DIP Lender shall be granted relief from the automatic stay to foreclose on its liens or take any other action available to the DIP Lender under the DIP Documents, this Interim DIP Order and applicable law. At any such hearing the Debtor may only contest the DIP Lender's declaration of the Event of Default and may not assert any other or additional defenses.

7.      <u>Limitation on Charging Expenses Against Collateral</u>.  No costs or expenses of administration of the Chapter 11 Case or any Successor Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no consent shall be implied from any other action, inaction, or acquiescence by

the DIP Lender, and nothing contained in this Interim DIP Order shall be deemed to be a consent by the DIP Lender to any charge, lien, assessment, or claims against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

8.      Payments Free and Clear.  Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Interim DIP Order, the DIP Documents, or any subsequent order of the Bankruptcy Court shall be irrevocable, received free and clear of any claim, charge, assessment, or other liability, including without limitation, any claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtor.

9.      Disposition of DIP Collateral. The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral, except as otherwise permitted by the DIP Documents or an order of the Bankruptcy Court except that following an Event of Default, the DIP Lender shall retain all rights to exercise any and all remedies under the DIP mortgage.

10.      Maintenance of Collateral.  The Debtor shall continue to maintain and insure the DIP Collateral in amounts and for the risks, and by the entities, as required under the DIP Documents.

11.      Payment to Express Trade.  The Debtor is authorized to use a portion of the DIP Line of Credit to pay amounts outstanding to Express Trade.

12.      Perfection of DIP Liens.

(a)      Without in any way limiting the automatically valid and effective perfection of the DIP Liens granted in this Interim DIP Order, the DIP Lender is hereby authorized, but not required, to file or record (and to execute in the name of the Debtor, as its true and lawful attorneys, with full power of substitution, to the maximum extent permitted by

13

law) a record estate mortgage and financing statements, notices of lien or similar instruments with the office of land records, including as may be reasonably required or deemed appropriate by the DIP Lender under applicable local laws, or take possession of or control over cash or securities, or to amend or modify security documents, or enter into, amend or modify intercreditor agreements, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to document, validate and perfect the liens and security interests granted to them hereunder (the "Perfection Actions"). Whether or not the DIP Lender shall take such Perfection Actions, the liens and security interests granted pursuant to this Interim DIP Order shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim DIP Order. Upon the request of the DIP Lender, the Debtor, without any further consent of any party, and at the sole cost of the Debtor as set forth herein, is authorized and directed to take, execute, deliver and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the DIP Liens in all jurisdictions, including all local law documentation therefor determined to be reasonably necessary by the DIP Lender.

(b)     A certified copy of this Interim DIP Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept a certified copy of this Interim DIP Order for filing and/or recording, as applicable. The automatic stay shall be modified to the extent necessary to permit the DIP Lender to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

13.    <u>DIP Commitment Letter Events of Default</u>.    The DIP Line of Credit shall be subject to each of the following Events of Default (which can be waived by the DIP Lender in its absolute discretion) but still occur automatically without notice or an opportunity to cure.

- The Debtor filing of a plan of reorganization that has not been consented to by the DIP Lender unless such plan pays the DIP Obligations in full, in cash with all accrued interest and fees, on the effective date or upon such other terms as may be agreed upon by the DIP Lender in its sole discretion.

- The Debtor's Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

- A default, subject to any applicable grace and/or cure periods, by the Debtor under the terms of the DIP Documents.

- Appointment in the Debtor's Chapter 11 Case of a Chapter 11 trustee or examiner with enlarged powers.

- Any sale of all or substantially all of the Debtor's assets unless the proceeds of such sale will indefeasibly satisfy the DIP Obligations in full in cash with interest and fees.

- The use or application of any cash or proceeds in a manner not provided for in the Budget.

- Entry of an order (a) granting relief from stay to any party with regard to any interest in the DIP Collateral or any other property of the estate of the Debtor or (b) approving the transfer of any of the DIP Collateral, or the actual transfer of any of the DIP Collateral either voluntarily or by operation of law, to a party other than the DIP Lender.

- The institution of any action that may impair any interest in the DIP Collateral held by the DIP Lender.

14.    <u>Absolute Prohibitions</u>.    The Debtor cannot under any circumstances take any action to do the following (each a "<u>Prohibited Transaction</u>"):

- The Debtor shall file a pleading seeking to vacate or modify the Interim DIP Order or a final DIP order over the objection of the DIP Lender.

- The Debtor's filing of (or supporting another party in the filing of) a motion seeking entry of, or the entry of an order by the Bankruptcy Court, granting any

super-priority claim or lien (except as contemplated herein) which is senior to or *pari passu* with the DIP Obligations.

- The granting of any lien senior to or *pari passu* with the DIP Liens.

15. <u>Termination</u>.  Upon the occurrence and during the continuance of an Event of Default (except for Prohibited Transactions which shall constitute an immediate and incurable default) the DIP Lender may, by written five (5) days' notice to the Debtor, its counsel, the U.S. Trustee and counsel for any official committee appointed in the Chapter 11 Case: (i) terminate the DIP Line of Credit and/or the DIP Commitment Letter, as applicable, (ii) declare all of the obligations in respect of or related to the DIP Commitment Letter and the other DIP Documents to be immediately due and payable, and (iii) exercise all rights and remedies under this Interim DIP Order.

16. <u>Preservation of Rights Granted Under this Interim DIP Order</u>.

(a)    Other than claims and liens expressly granted by this Interim DIP Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim DIP Order to the DIP Lender shall be permitted while any of the DIP Obligations remain outstanding, and, except as otherwise expressly provided in this Interim DIP Order, the DIP Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including

any regulatory body), commission, board or court for any liability of the Debtor; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Debtor.

(b)    The occurrence and continuance of any event of default in violation of any of the terms of this Interim DIP Order or the DIP Documents, including the events of default set forth above, shall, after notice by the DIP Lender (acting in accordance with the terms of this Interim DIP Order) in writing to the Debtor, its bankruptcy counsel (Davidoff Hutcher & Citron LLP), the U.S. Trustee, and lead counsel to any official committee appointed in the Chapter 11 Case (and, in the case of violation of any terms of this Interim DIP Order, and after indefeasible payment in full in cash of the DIP Obligations and termination of the DIP Line of Credit, notice to such parties by the DIP Lender), constitute an event of default under this Interim DIP Order (an "Event of Default") and, upon such notice of any such Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Documents. Notwithstanding any order that may be entered dismissing the Debtor's Chapter 11 Case under section 1112 of the Bankruptcy Code: (i) the DIP Superpriority Claims, the DIP Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim DIP Order until all DIP Obligations shall have been paid in full in cash, where applicable (and that such DIP Superpriority Claims, DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim DIP Order shall not be affected; and (iii) this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all of the claims, liens and security interests referred to in this paragraph and otherwise in this Interim DIP Order.

(c)    If any or all of the provisions of this Interim DIP Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Liens. Notwithstanding any reversal, modification, vacatur or stay of any DIP Obligations incurred by the Debtor prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacatur or stay, any such use shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Lender shall be entitled to, and is hereby granted, all the rights, remedies, privileges and benefits arising under section 364(e) of the Bankruptcy Code, this Interim DIP Order and the DIP Documents with respect to all uses of the DIP Obligations.

17.    Except as expressly provided in this Interim DIP Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this Interim DIP Order and the DIP Documents shall survive with priority over all existing liens and mortgages, and shall not be modified, impaired or discharged by: (i) the entry of an order converting the Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Debtor's Chapter 11 Case or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in the Debtor's Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim DIP Order and the DIP Documents

shall continue in the Debtor's Chapter 11 Case, in any Successor Case and in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of this Interim DIP Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the DIP Line of Credit has been terminated.

18.    <u>Limitation on Use of DIP Line of Credit Proceeds and Collateral</u>. Notwithstanding any other provision of this Interim DIP Order or any other order entered by the Bankruptcy Court, no DIP Line of Credit or DIP Collateral may be used directly or indirectly for items not set forth in the Budget, but can never under any circumstances be used to pay for: (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation: against the DIP Lender and its predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, in each case in their respective capacity as such, or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, granted to the DIP Lender; (b) to prevent, hinder, or otherwise delay or interfere with the DIP Lender's enforcement or realization on the DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under this Interim DIP Order following an uncurable default or Event of Default, as applicable, each in accordance with the DIP Documents, or this Interim DIP Order.

19.    <u>Interim DIP Order Governs</u>. In the event of any inconsistency between the provisions of this Interim DIP Order and the DIP Documents or any other order entered by this Bankruptcy Court, the provisions of this Interim DIP Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Bankruptcy Court, any payment made

pursuant to any authorization contained in any other order entered by this Bankruptcy Court shall be consistent with and subject to the requirements set forth in this Interim DIP Order and the DIP Documents, including, without limitation, the Budget.

20.     <u>Binding Effect; Successors and Assigns</u>. The DIP Documents and the provisions of this Interim DIP Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, and its respective successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and its successors and assigns; <u>provided</u> that the DIP Lender shall have no obligation to permit the use of the DIP Collateral by, or to extend any financing to, any Chapter 7 trustee, Chapter 11 trustee, or similar responsible person appointed for the estate of the Debtor.

21.     <u>Exculpation</u>. Nothing in this Interim DIP Order, the DIP Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender for any claims arising from the pre-petition or post-petition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts. The DIP Lender shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtor.

22.    <u>Limitation of Liability</u>. In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim DIP Order or the DIP Documents, the DIP Lender shall not: (a) be deemed to be in "control" of the operations of the Debtor; (b) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Interim DIP Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from the pre-petition or post-petition activities of the Debtor.

23.    <u>Insurance</u>. The DIP Lender is deemed to be the loss payee under the Debtor's insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of the insurance policies, to the indefeasible payment in full of the applicable DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Line of Credit.

24.    <u>Credit Bidding</u>. The DIP Lender shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the applicable DIP Obligations in any sale of the DIP Collateral outside the ordinary course of business and without the need for further Bankruptcy Court order authorizing the same and whether any such sale is effectuated through sections 363(k), 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. No prepetition secured claimant may credit bid in

any disposition of any DIP Collateral unless such sale provides for indefeasible payment in full in cash to the DIP Lender of all DIP Obligations.

25.     <u>Effectiveness</u>. This Interim DIP Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim DIP Order shall be immediately effective and enforceable upon their entry and there shall be no stay of execution or effectiveness of this Interim DIP Order.

26.     <u>Governing Order</u>. Notwithstanding the relief granted in any other order by this Bankruptcy Court: (i) all payments and actions by the Debtor pursuant to the authority granted therein shall be subject to this Interim DIP Order, including compliance with the Budget and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of such other order and this Interim DIP Order, this Interim DIP Order shall control, in each case, except to the extent expressly provided otherwise in such other order.

27.     <u>Modification of DIP Documents and Budget</u>. The Debtor is hereby authorized, without further order of this Bankruptcy Court, to enter into agreements with the DIP Lender providing for any consensual non-material amendments, modifications, waivers, or supplements to the Budget or the DIP Documents, or of any other amendments, modifications, waivers, or supplements to the DIP Documents necessary to conform the terms of the DIP Documents to this Interim DIP Order, in each case consistent with any amendment provisions of the DIP Documents; <u>provided</u>, <u>however</u>, that notice of any material amendment, modification, waivers, or supplement to the DIP Documents shall be provided to the U.S. Trustee and any statutory

committee, which shall have five (5) calendar days from the date of such notice within which to object, in writing, to the amendment, modification, waivers, or supplement. If the U.S. Trustee, or any statutory committee, timely objects to any such material amendment, modification, waivers, or supplement to the DIP Documents, the material amendment, modification, waivers, or supplement shall only be permitted pursuant to an order of the Bankruptcy Court. The foregoing shall be without prejudice to the Debtor's right to seek approval from the Bankruptcy Court of a material amendment, modification, waivers, or supplement on an expedited basis.

28.    <u>Indemnification</u>. The Debtor shall indemnify and hold harmless the DIP Lender (an "<u>Indemnified Party</u>") from and against any and all claims, damages, losses, liabilities, and expenses (including, without limitation, fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against the DIP Lender, in each case arising out of or in connection with or relating to any investigation, litigation, or proceeding or the preparation of any defense with respect thereto, arising out of or in connection with or related to the DIP Line of Credit or the transactions contemplated thereby, or any use made or proposed to be made with the DIP Line of Credit proceeds, whether or not such investigation, litigation, or proceeding is brought by the Debtor or any member or creditors of the foregoing, except to the extent such claim, damage, loss, liability, or expense is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the DIP Lender's fraud, gross negligence, or willful misconduct.

29.    <u>Final Hearing</u>. A hearing (the "<u>Final Hearing</u>") to consider the relief requested in the DIP Motion on a final basis shall be conducted on September __, 2025 at __:00 _.m. before the Honorable Jil Mazur-Marino, United States Bankruptcy Judge, Eastern District of New York.

30.     Headings. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim DIP Order.

31.     Payments Held in Trust. Except as expressly permitted in this Interim DIP Order or the DIP Documents, and except with respect to the Debtor, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of the DIP Line of Credit, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Lender and shall immediately turn over the proceeds to the DIP Lender, or as otherwise instructed by this Bankruptcy Court, for application in accordance with the DIP Documents and this Interim DIP Order.

32.     Bankruptcy Rules. The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

33.     No Third-Party Rights. Except as explicitly provided for herein, this Interim DIP Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

34.     Necessary Action. The Debtor and the DIP Lender are authorized to take all actions as are necessary or appropriate to implement the terms of this Interim DIP Order.

35.     Retention of Jurisdiction. The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim DIP Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the

terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

36.    The Debtor shall promptly serve copies of this Interim DIP Order to the Noticed Parties and to any party that has filed a request for notices with this Bankruptcy Court.

Dated: August __, 2025
Brooklyn, New York

_____
HONORABLE JIL MAZER-MARINO
UNITED STATES BANKRUPTCY JUDGE