DAVIDOFF HUTCHER & CITRON LLP
*Proposed Attorneys for the Debtor and*
*Debtor-in Possession*
605 Third Avenue
New York, New York 10158
(914) 381-7400
Robert L. Rattet, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

In re:

BEAR'S FRUIT LLC,

        Debtor.

------------------------------------------------------------------ X

Chapter 11 (Subchapter V)

Case No. 25-43951 (JMM)

**DECLARATION OF AMY DRISCOLL IN SUPPORT OF MOTION FOR ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTION 364(c) OF THE BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF**

  I, Amy Driscoll, serve as Co-Founder and Manager of the above captioned debtor and debtor in possession (the "Borrower"), and hereby file this declaration (the "Driscoll Declaration") in support of the *Motion for Order (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Administrative Expense Status Pursuant to Section 364(c) of the Bankruptcy Code, and (III) Granting Related Relief* (the "DIP Motion"), being filed contemporaneously herewith.[1]

  1.  I have reviewed the DIP Motion, and except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.

---

[1]  Terms not otherwise defined herein shall have the meaning ascribed to them in the DIP Motion.

2. Pursuant to the DIP Motion, the Borrower seeks approval of post-petition financing in the form of a revolving line of credit (the "DIP Line of Credit"), under the DIP Commitment Letter attached to the DIP Motion, in a principal amount not to exceed $150,000, with interim authority to borrow $95,000, and with the term of the DIP Line of Credit extending for the duration of the Chapter 11 Case.

3. I understand that pursuant to the DIP Line of Credit: (i) the Borrower intends to grant to the DIP Lender liens on all of the Borrower's assets, including its accounts receivable, inventory, equipment, and proceeds thereof. I also understand that the Debtor will use a portion of the DIP Line of Credit to pay off all amounts outstanding to Express Trade Capital, Inc. ("Express Trade").

4. I testify that the Borrower will utilize the funds from the DIP Line of Credit to cover expenses necessary to preserve ongoing operations, including costs associated with: (i) the various payments to critical vendors and for other costs associated with an August 29th production run; (ii) ongoing storage and distribution costs associated with its products; (iii) essential operating expenses, including court-approved owner compensation, insurance, and administrative costs of this Chapter 11 Case; (iv) sales and marketing commitments to retail partners including Whole Foods and Wegmans; and (v) other working capital and administrative expenses of this Chapter 11 Case. I also understand that approximately $40,000 will be paid to Express Trade. Subject to Court approval, all borrowings will be made in accordance with the Budget attached to the DIP Motion.

5. The Borrower has an immediate and critical need to obtain the DIP Line of Credit to fund its August 29th production run and other necessary operating expenses. Without immediate interim financing, the Borrower will be unable to sustain operations, fund its August 29th

production run, or meet other necessary and integral business obligations. The Borrower faces immediate and irreparable harm absent approval of interim borrowing, including the loss of approximately $53,000 in raw materials already procured, and up to $250,000 in revenue loss and spoils from missing its production run. The Borrower has committed to a promotion at Wegmans from August 31st to September 27th, 2025. Because two of the four SKUs are already out of stock, the Borrower cannot fulfill this commitment if the August 29th production run does not occur, and missing this run would severely impact the promotion and vendor relationship. As such, the value of the estate will be maximized by continuation of the Borrower as a going concern, and the availability of DIP financing is critical to maintaining those operations.

6. I am aware that Court guidelines governing the DIP Motion require that the Borrower solicit multiple offers for DIP financing prior to making its business decision on the selection of the best DIP financing offer to present to the Court.

7. The Borrower engaged in discussions with its prepetition factor, Express Trade, and with its largest investor, Forwood Cloud Wiser III (the "DIP Lender"). I understand that Mr. Wiser is an accredited investor.

8. I reviewed Express Trade's proposal and understand that Express Trade offered only an accounts-receivable DIP facility with no inventory lending. Its terms required that seventy-five percent (75%) of all proceeds from existing inventory sales be used to repay its prepetition inventory loan, leaving only twenty-five percent (25%) available for operations, and also demanded adequate-protection payments equal to seventy-five percent (75%) of all inventory sales proceeds. Express Trade further asserted that purchased accounts receivable were not property of the estate. I do not believe that these terms would not provide sufficient liquidity to fund the Borrower's imminent production run and would have left the estate under severe cash strain.

9.     By contrast, the DIP Lender offered an interest-only revolving line of credit at 4% per annum—well below what I understand to be the prevailing ten (10) to twenty percent (20%) market rate for Subchapter V DIP loans[2]—with $95,000 available immediately on an interim basis and the balance available following a final hearing, without excessive fees or reporting covenants. The Borrower will also only be required to pay interest on the amount drawn. The Borrower determined that this offer represents the best and only actionable financing option on the timetable required.

10.    The DIP Lender is a current investor, familiar with the Borrower's operations, and able to provide financing promptly and on non-onerous terms.  The proposed financing also does not elevate the DIP Lender's prior investment in the Borrower in any way.

11.    Based on the proposals received and the exigent circumstances, the Borrower concluded that the DIP Line of Credit offers the most favorable terms available, satisfies the requirements of Bankruptcy Code § 364(c), and is essential to preserve the Borrower's value.

12.    The Borrower would be unable to obtain unsecured credit allowable under § 503(b)(1) as an administrative expense or secured credit on more favorable terms without granting the liens and super-priority claims provided in the DIP Line of Credit.

13.    I believe the terms of the DIP Line of Credit are fair and reasonable, reflect the Borrower's prudent business judgment, and provide reasonably equivalent value and fair consideration.

14.    I, along with the Borrower's counsel, participated in the negotiations with the DIP Lender. The DIP Line of Credit was negotiated in good faith and at arm's length, and all obligations thereunder will be extended in good faith.

---

[2]  Based on my review of the article "High-cost DIP loans and unique structures shape bankruptcy financing in early 2025" on Debtwire (April 30, 2025).

15. I assisted with preparation of the Budget, which reflects the Borrower's anticipated weekly disbursements and is in form and substance acceptable to the DIP Lender. I believe the Budget is reasonable under the circumstances.

16. This concludes my Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2025

By: */s/ Amy Driscoll*
      Amy Driscoll